IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LORRAINE PLACIDO,

    Plaintiff,

v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, NORTEL NETWORKS LONG TERM DISABILITY PLAN,

    Defendants.
                               /

AND RELATED COUNTERCLAIMS.
                               /

No. C 09-00668 WHA

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Lorraine Placido has been disabled since 1996 due to a stroke she suffered in 1993. She received long-term disability (LTD) benefits through defendant Nortel Networks Long Term Disability Plan, which was administered by defendant Prudential Insurance Company of America. Pursuant to the terms of the plan, plaintiff's LTD benefits were to be reduced by the amount of other sources of income payable to her due to her disability, including social security disability (SSD) benefits.

The Nortel Plan assisted plaintiff in applying for SSD benefits. Plaintiff and the plan agreed that her LTD benefits would not be reduced while she applied for SSD benefits, but if plaintiff ever received an overpayment of LTD benefits due to later receipt of SSD benefits, she was obligated to reimburse the plan for the overpayment. She agreed to give the plan "any

reasonable information" about her social security claim to allow it to determine the amount of monthly LTD benefits to which she was entitled. In February 2002 her SSD monthly benefits were drastically increased. Plaintiff, however, did not follow through on her agreement to notify the plan. Because the plan did not know to offset her LTD benefits against these new SSD monthly benefits, plaintiff received over $100,000 from it in overpaid LTD benefits.

Defendants eventually discovered on their own that plaintiff was receiving SSD benefits to which she had not been entitled. Beginning in January 2007, defendants began offsetting plaintiff's monthly LTD benefits to correct for the overpayments she had received since 2002. In this action, plaintiff challenges the offsets, demanding that defendants pay back the amounts already offset. Plaintiff also claims that defendants' cost-of-living adjustments to her benefits calculations are not consistent with the plan's terms. Defendants counterclaim for declaratory relief that they were entitled to take the offsets and for restitution of the remaining overpayments. The parties have filed cross-motions for summary judgment. Because defendants were entitled to recoup the overpayments through offsets of her monthly LTD benefits, plaintiff's motion for summary judgment is **DENIED**, and defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Plaintiff was an employee at Nortel Networks (PRU0674). In 1993, she was hospitalized due to a stroke that damaged her brain (PRU0274). She thereafter returned to work on a part-time basis with limited and modified work capacities from 1994 to 1996 (PRU0955). Since May 1996, plaintiff has been unable to work due to stroke-related dysfunctions including cognitive impairment, focus problems and emotional control difficulties (PRU0263, PRU0955). It is uncontested that plaintiff was and remains disabled.

Nortel is the sponsor and plan administrator of the Nortel Long Term Disability Plan, an employee welfare benefit plan governed by ERISA. In November 1996, plaintiff submitted a claim for benefits to the plan (PRU0676). At that time, the plan was administered by CIGNA. In December 1996, CIGNA approved plaintiff's claim for LTD benefits with a date of disability of November 1996 (PRU0882). The letter granting her claim (*ibid.*) stated:

> Your LTD benefits are generally reduced by any other benefits you receive, and if so stated in your contract, by any social security benefits your dependants receive on account of your social security award. Please notify us immediately if you are receiving or should become entitled to receive any income from other sources such as social security disability or retirement, statutory disability, employer sick leave, VA, workers' compensation, no-fault, employer pension, etc."

The plan contained a section entitled "Reduction of Benefits Due to Other Income" (PRU0688). It stated:

> "LTD benefits will be reduced by other sources of income payable to you or your Dependants because of your disability or retirement.
>
> For the purposes of this plan, "other income" includes:
> . . .
> • any other disability, retirement or unemployment benefits required or provided for under any law of any government — for example:
> . . .
> - Social Security benefits. . . including Dependents' benefits, but not counting any increase in benefits after STD benefit payments have started under this plan."

For example, if a person received LTD benefits of $900 per month under the plan, and also received $500 per month in social security benefits, the person's LTD benefits would be reduced to $400 per month so that his or her total income would equal $900 a month (PRU0689).

The plan stated that, "[a]ny periodic or single lump sum payments [of other income] received as a retroactive award may be allocated [for purposes of the plan] retroactively" (*ibid.*).

The plan further provided (PRU0690) that:

> "If the Claims Administrator finds that the actual amount of Social Security and other income benefits is different than the amount used to determine your LTD benefits, these rules apply:
>
> 1. If LTD benefits have been underpaid, this plan will make a lump sum payment to bring the total payments to the amount that should have been paid.
>
> 2. If LTD benefits have been overpaid, this plan may either require a lump sum reimbursement payment to the plan or reduce or eliminate future payments. In this case, plan minimums will not apply."

Under the plan's terms, it was the beneficiary's responsibility to complete applications for social security benefits and to undertake any necessary processes for appeal if such benefits were

3

initially denied (PRU0689). The plan provided that, "[i]f you sign a Reimbursement Agreement, your Social Security or other income will not be estimated while your applications and appeals are pending" (*ibid.*).

Beginning in November 1996, the plan assisted plaintiff with her application for SSD benefits (PRU944). It also contacted the SSA directly to provide information in support of plaintiff's application (PRU800).

In December 1996, plaintiff signed a one-page reimbursement agreement acknowledging her understanding that her LTD monthly benefits would be reduced by any disability benefits she received on her own behalf under the federal Social Security Act (PRU0374). Per the terms of the reimbursement agreement, plaintiff's LTD monthly benefits were not reduced while she pursued social security benefits by the amount of benefits Nortel assumed she would receive. She agreed that (*ibid.*):

> "If I later receive Social Security Disability or Old Age Benefits for myself or my dependants, I will reimburse Northern Telecom for the full amount of any overpayment on my Long Term Disability claim that results from these benefits. I understand that I must reimburse Northern Telecom only for the amount of this overpayment. I will make reimbursement in one lump sum, within 30 days after receiving my social security award. Northern Telecom may, at its option, unilaterally recover the overpayment by reducing future monthly benefits. I agree to give Northern Telecom any reasonable information about my Social Security claim needed to determine the monthly benefits I am entitled to under the Long Term Disability policy."

In January 1997, CIGNA notified plaintiff of an error in calculating her benefits which had resulted in an underpayment and reimbursed her for the difference: $1497.47 (PRU0875).

In May 1997, the Social Security Administration decided to classify plaintiff's LTD benefits payments in lieu of California state disability insurance payments. It therefore decided to offset plaintiff's SSD benefits based on the amount of LTD benefits she was receiving from CIGNA (PRU0804). The SSA informed plaintiff that her initial entitlement SSD award amount was $1,314.60, but her actual monthly benefit would be only $38.00 due to the offset for her CIGNA LTD benefits of $4,754.10 per month (*ibid.*).

In June 1997, CIGNA notified plaintiff that as a result of her SSD benefits of $38.00 per month, her LTD benefits had been previously overpaid by $193.78 because her LTD monthly

4

benefits had not been reduced while she pursued social security benefits (PRU0789). Plaintiff therefore had a duty to reimburse the plan for the overpayment. Plaintiff acknowledged her duty to repay this amount and sent a check to CIGNA for the amount (PRU0785).

In June 1997, CIGNA also informed plaintiff that SSA's policy of offsetting her LTD benefit as a replacement benefit for California state disability should not continue for more than 52 weeks because 52 weeks was the maximum benefit period for California state disability benefits (PRU0445). CIGNA assisted plaintiff with her appeal of the SSA's decision to offset her LTD benefit. It instructed her that, "[o]nce this issue has been resolved, have the SSA provide you with a corrected award notice and forward a copy to our office" (PRU0769). Thereafter, CIGNA continued to pay plaintiff LTD benefits while taking an offset of only $38.00 per month for SSD benefits (PRU0792).

In December 1997, plaintiff informed CIGNA that her SSD payment had been increased to $66.00 per month (PRU0777). In February 1998, CIGNA contacted plaintiff and stated that it expected her to be receiving "full" SSD benefits by that time (PRU772). In response, plaintiff informed CIGNA that she had not yet heard a decision from SSA regarding her appeal (PRU771). CIGNA continued to offset only $38.00 per month. In June 1998, plaintiff informed CIGNA that SSA had denied her appeal (PRU761).

On January 1, 2000, Prudential took over from CIGNA as claims administrator for the plan. In December 2000, Prudential determined based on a review of plaintiff's file that it would continue to offset $38.00 per month. Prudential noted in the file, "cigna [sic] investigated this unusual claim. Altho [sic] it is unusual for SSA to offset LTD, it has been known to happen in CA" (PRU0460).

In February 2001, plaintiff received a notice from the IRS regarding her 1996 tax return indicating a discrepancy between her tax return and her reported social security earnings (PRU0439). In particular, the IRS determined that plaintiff's income calculations for tax purposes were incorrect because the SSA had incorrectly classified her SSD payments as worker's compensation benefits (*ibid.*). In May 2001, plaintiff thereafter requested that the SSA

5

1  reconsider its classification of her SSD payments based on "new and material evidence"
2  (PRU0440).

3      A telephone call log in plaintiff's file indicates that in March 2001, a Nortel employee
4  called Prudential regarding plaintiff. The call log notes that the Nortel employee "has info that
5  [plaintiff] is receiving ~1500.00/mo" of SSD benefits (PRU0505). The record does not indicate
6  how Nortel got this information, nor what follow-up was done by Prudential at that time.

7      In February 2002, the SSA sent plaintiff a letter that it would reclassify her LTD benefits
8  from Nortel as "a private disability pension and not considered in lieu of any state payment"
9  (PRU0441). The SSA would also pay her full benefits retroactively to December 1996 (*ibid*.).

10      Plaintiff's monthly benefits from the SSA thereafter increased from $66.00 per month to
11  over $1,300.00 per month (PRU0296). In addition, the SSA paid plaintiff about $66,600 in back
12  benefits for the period from December 1996 to February 2002 (*ibid.*). Plaintiff did not notify
13  defendants of these adjustments to the SSD benefits that she received from the SSA.

14      In October 2006, Prudential reviewed plaintiff's SSD benefits offset amount (PRU392). It
15  noted that the offset amount of $38.000 had continued because "AETNA had informed our office
16  that this sometimes happens with [social security] in California" (*ibid.*). Prudential, however,
17  noted that "[i]n 2001, a phone call was rec'd indicating that [plaintiff] was rec'g 1500/mo from
18  ssdb, no action was taken and appears it was done" (*ibid*.). Prudential stated that its plan going
19  forward was to confirm the amount of plaintiff's social security benefit amount, then "make
20  necessary adjustment (*ibid*.).

21      Prudential requested that a third party vendor, Allsup Inc., obtain from the SSA plaintiff's
22  social security payment history dating back to her date of disability (PRU0470). Allsup
23  determined that plaintiff had been paid an SSD benefit award amount of $1,314 effective
24  November 1996, and increasing amounts thereafter (PRU0296, 695).

25      In January 2007, Prudential reviewed the information obtained by Allsup and determined
26  that based on the retroactive award of SSD benefits that plaintiff had received, her LTD benefits
27  had been overpaid (PRU0659). Specifically, her LTD benefits had been offset by only $38.00 per
28  month of SSD benefits, rather than the full amount of her award of over $1300.00 per month.

6

Prudential calculated that the amount of overpayment was $159,702.84 (*ibid*.). As of January 2007, it began to offset plaintiff's monthly LTD benefits to recover this amount (PRU0660). Plaintiff's LTD payments were reduced by $1,332.00 per month (PRU0315–16).

In April 2007, plaintiff appealed Prudential's decision to reduce her LTD benefits (PRU0439–42). She demanded that Prudential negate the overpayment and pay back amounts already offset. She noted the difficulties she had encountered due to SSA's misclassification of her SSD benefits and that she had completed all documents as requested at all times (*ibid*.). She also noted that her medical condition adversely affected her thinking and that she "should not be held accountable for decisions made beyond the scope of mental capability" (PRU0440). Prudential then contacted plaintiff's physician's office and obtained confirmation that plaintiff was competent to endorse checks and handle the proceeds (PRU0516). Plaintiff also demanded that Prudential pay COLA for 2006, which Prudential responded would be included in its recalculation of her benefits (PRU0652).

Plaintiff also argued that the plan also owed plaintiff for past Medicare Part B premiums (PRU0361). Prudential thereafter acknowledged this underpayment and agreed to recalculate her benefits (PRU0636). In May 2008, Prudential informed plaintiff that this underpayment would be applied to her outstanding balance owed due to the overpayment she had previously received (PRU0309). According to Prudential's calculations, plaintiff's benefits had still been overpaid by $107,974.51 as of April 2008 (PRU0316). Prudential denied plaintiff's appeal (PRU0634). Plaintiff thereafter brought the instant lawsuit.

## ANALYSIS

**1. THE STANDARD OF REVIEW IS ABUSE OF DISCRETION.**

As a threshold matter, the applicable standard of review must be determined. A district court review of denial of benefits under ERISA is *de novo* unless the plan gives the administrator discretionary authority to determine eligibility for benefits. If the plan grants discretionary authority, the administrator's decision is reviewed for abuse of discretion. *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008).

7

Here, the plan was originally administered by CIGNA. At that time, the plan documents vested discretionary authority in the Nortel's Employee Benefits Committee ("EBC"), granting the EBC final discretionary authority to construe and interpret the plan, to decide all questions of eligibility for benefits and to determine the amount of such benefits (PRU0984).

When Prudential was appointed as claims administrator of the plan in 2000, it entered an administrative services agreement ("ASA") with Nortel that designated Prudential as the "appropriate named fiduciary" and conferred upon Prudential "discretionary authority to determine eligibility for benefits[;] to determine the amount of benefits for each claim received; and to construe the terms of the Plan" (Hanan Decl., Exh. B at Plan0000051).

Plaintiff argues that the ASA is insufficient to grant discretionary authority because it is not part of the original plan documents, but was instead created later. It cites no authority, however, holding that an ASA entered into between an employer sponsor and a claims administrator may not confer discretionary authority to the administrator as a matter of contractual agreement to shift the standard of review to abuse of discretion. Here, the plan documents grant discretionary authority to Nortel. The ASA, in turn, unambiguously conferred that authority from Nortel to Prudential. This is sufficient to confirm discretionary authority upon Prudential to make final decisions with respect to the payment of claims. Therefore, Prudential's decision to deny benefits shall be reviewed under the "abuse of discretion" standard of review.

**2.    DEFENDANTS WERE ENTITLED TO OFFSET OVERPAYMENTS TO PLAINTIFF.**

Defendants here seek summary judgment with respect to plaintiff's claims. Here, the terms of the plan clearly and unambiguously provide that plaintiff's LTD benefits shall be reduced by SSD benefits. Furthermore, even though plaintiff's LTD benefits would not be reduced while she pursued SSD benefits by the amount of SSD benefits she was expected to receive, plaintiff explicitly agreed that if she later received SSD benefits, she would reimburse defendants for the full amount of any overpayment of her LTD benefits that resulted from obtaining SSD benefits. The plan further provided that Nortel could opt to unilaterally recover such an overpayment by reducing future monthly benefits. Defendants were therefore entitled to recover the LTD benefits that should have been offset by her SSD benefits.

8

United States District Court
For the Northern District of California

1    Plaintiff argues that the plan's overpayment provision should not apply to her. As noted
2 above, a section of the plan entitled "Reduction of Benefits Due to Other Income" provided that
3 plaintiff's LTD benefits would not be reduced by any increase in her social security benefits
4 "after STD benefit payments have started under this plan" (PRU0688). Plaintiff argues that her
5 social security benefits were increased in this case from $38.00 to over $1300 per month after her
6 STD benefit payments started in 1996.

7    This argument fails. Although plaintiff initially *received* only $38.00 per month because
8 the SSA applied an offset, her original benefits *award* was actually $1,314.60. The retroactive
9 payment by the SSA of the amounts that the SSA had previously offset therefore do not count as
10 an increase in benefits for purposes of the plan's "Reduction of Benefits Due to Other Income"
11 section.

12 **3.    PLAINTIFF FAILED TO DISCLOSE THE INCREASE IN SSD BENEFITS SHE RECEIVED.**

13   Plaintiff argues that the statute of limitations limits any recovery of alleged overpayments
14 to benefits issued four years prior to the date defendants filed their counterclaims. There is a
15 four-year statute of limitations for fiduciaries to bring ERISA actions seeking to enforce a plan's
16 terms. This statute of limitations begins to run once defendants had reason to know that a breach
17 had occurred. *See Wise v. Verizon Communications Inc.*, 600 F.3d 1180, 1188 (9th Cir. 2010).

18   Plaintiff, however, fails to show that defendants had reason to know of plaintiff's revised
19 social security award in 2006. In the one-page reimbursement agreement that plaintiff signed in
20 December 1996, she also agreed to "give Northern Telecom any reasonable information about
21 [her] Social Security claim needed to determine the monthly benefits" to which she was entitled
22 (PRU0374). Defendants reasonably relied upon this agreement and therefore did not more
23 quickly discover the increase in the SSD benefits she received. Pursuant to the agreement,
24 defendants were not obligated to monitor and investigate future revisions of plaintiff's awards.
25 Instead, it was *plaintiff* who was obligated to (but did not) inform defendants of any reasonable
26 information about her social security claim.

27    Plaintiff argues that defendants' notes show that even though she failed to notify them,
28 they already knew of her increased benefits. The administrative record does not support her

9

contention. Plaintiff relies on a note in defendants' files dated 2001 stating that plaintiff had been awarded over $1500 in monthly social security benefits. In fact, the record shows that defendants believed that the SSA continued to offset this award against plaintiff's LTD award such that she received only $66.00 per month. The SSA revised this classification and retroactively paid plaintiff the full amount of her SSD benefits award in 2002. Defendants' 2001 note predated the SSA's revised decision, so it could not possibly reflect defendants' knowledge of the revision.

Because defendants did not have reason to know that plaintiff's SSD benefits award had been revised until 2006, their recovery is not barred by the statute of limitations except as follows: defendants *were* informed in 1997 that plaintiff's SSD payment had been increased to $66.00 per month but they continued to take an offset of only $38.00 per month until 2007. This difference of $28 per month is barred by the statute of limitations, and defendants may not now recover for that amount.

**4.    DEFENDANTS' COLA ADJUSTMENTS WERE NOT ERRONEOUS.**

Plaintiff argues that defendants' benefits calculations are not consistent with the plan's terms for two reasons. *First,* she asserts that the COLA should be based upon the total amount of plaintiff's benefits including the SSD benefits that she received. This argument is inconsistent with the terms of the plan which provides in relevant part that the COLA adjustment "applies to [a beneficiary's] core and optional LTD benefits each year after the first year of LTD" (PRU0691). Prudential has interpreted this to mean the amount of benefits that are actually received, not SSD benefits. Defendants also note that SSD benefits are subject to a separate COLA so that if plaintiff's interpretation were adopted, it would amount to "double dipping" of the COLA increases. Prudential's interpretation of the plan's language is the more reasonable one, and at the very least is not an abuse of its discretion.

*Second*, plaintiff argues that the consumer price index used by Prudential to calculate the COLA is incorrect. Prudential calculates the COLA using the Consumer Price Index from the United States Department of Labor Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W). Plaintiff argues that the Consumer Price Index for All Urban Consumers (CPI-U) should be used instead. Plaintiff, however, does not explain why she is prejudiced by the

10

use of the CPI-W, nor why the CPI-U should be used instead. She was, moreover, on notice since at least 1999 that the CPI-W index would be used for her COLA adjustments (PRU0726). Prior to her opposition to defendants' motion for summary judgment, she did not object to the use of the CPI-W index. For these reasons, her argument regarding which index should be used fails.

**5.    DEFENDANTS' COUNTERCLAIMS ARE MOOT.**

Plaintiff finally argues that defendants' counterclaims are for money damages and therefore are inappropriate as ERISA claims. Under ERISA, a fiduciary may only assert claims for equitable relief, not for payment of past due money. *Great-West v. Knudson*, 534 U.S. 204, 215 (2002). In *Knudson*, the Supreme Court held that an ERISA plan's stop-loss carrier could not sue a plan participant for recovery of a tort settlement that the participant obtained from a separate tortfeasor. The plan sought to recoup funds it had previously paid for the participant's medical care. The Supreme Court held that the plan was merely seeking legal relief, not equitable relief, and therefore could not bring a claim as a fiduciary under Section 502(a)(3) of ERISA. *Ibid.*

*Knudson*, however, is distinguishable from the present action. Unlike Great-West, defendants here do not simply seek "to impose personal liability . . . for a contractual obligation to pay money." *Knudson,* 534 U.S. at 210. Instead, they seek recovery through a constructive trust or equitable lien on a specifically identified source— plaintiff's LTD benefits payments — not from plaintiff's assets generally, as would be the case with a contract action at law. The present action therefore more closely resembles the equitable action in *Sereboff v. MidAtlantic Medical Services, Inc.*, 126 S.Ct. 1869 (2006), where the Supreme Court allowed a fiduciary to recover from a beneficiary for reimbursement of medical expenses paid by an ERISA plan because (the Supreme Court held) the action was equitable in nature.

In all events, this order need not decide whether defendants' counterclaims are equitable or legal in nature because defendants have now recovered through offsets the entire amount of the plan's overpayment to plaintiff that is the subject of this lawsuit. Defendants therefore agree that their counterclaims are moot and should be dismissed.

**CONCLUSION**

11

1    For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED**.

Defendants' motion for summary judgment as to plaintiff's claims is **GRANTED**, and as to their own counterclaims is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: August 5, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE